InRichard F. Reznak
P.O. Box 55129
North Pole , Alaska
Zip 99705
Plaintiff,

vs

Donald H. Rumsfeld
Secretary of Defense, incapacity as head
of the Army and Air Force Exchange Service.
Defendant,

May 10, 2006

RECEIVED
MAY 1 5 2006
CLERK, U.S. DISTRICT COURT
FAIRBANKS, ALASKA

Case No. F05-0007 CV RRB
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS , OR IN THE
ALTERNATIVE , FOR SUMMARY
JUDGEMENT.

## Introduction

The Secretary of Defense has moved to dismiss because the Plaintiff allegedly did not exhaust his administrative remedies. The Secretary of Defense is being prevented from enforcing the regulations of the company he heads. Administrative remedy is attainable of which has always been the Plaintiff's first choice. The Defendant simply won't follow regulations outline in the EOP 15 - 10. The operating manual contains guidelines on how to remedy administrative error. AAFES is the administrator of these regulations so AAFES has no authority to lay claim to any exemption from policy. There has been a lengthy ongoing dialog in dispute to almost all material fact presented for the past several years. The Army and Air Force Exchange Service has no right to be given sovereign immunity over administrative actions they are mandated to uphold by law. Exhibit 1 contains regulation excerpts from EOP 15 -10 . The Plaintiff's retirement was unlawful.

## Undisputed Facts

The Plaintiff was a former Service Station Manager at both Fort Wainwright and Eielson Air Force Base. The Plaintiffs tenure was not always smooth because he did not knuckle under to unlawful pressure for participating in activities designed to protect employees and the corporation from exploitation or abuse. The Plaintiff always followed administrative regulations and sought only fair equitable treatment of himself and his employees within the framework of the organization.

Since 1995 the Plaintiff participated in protected activities such as the EEO program and employee evaluation rebuttals. The Plaintiff became the recipient of reprisal action due to professional jealousy. To site a specific example the Defendants motion sites " The New Management did not agree with Mr. Reznak's requests and concerns with regard to staffing and equipment. " When the Plaintiff made his deposition he provided the U.S. Attorney with a Congressional Complaint written by one of his employees, which he concurred with that resulted in this mis assessment of the Plaintiff's background by the Defendant. The Plaintiff advised management about the staffing problem and was berated on his evaluation report for voicing his professional concerns. This was long before the employee complaint was investigated. The employee won and settled for over $ 42,000 in back pay and allowances. The Plaintiffs employment records reflect untrue material fact about the Plaintiff and his real relationship with management. Exhibit 2 is a copy of the Congressional Complaint and a PER Rebuttal reply from management.

As a second example with regard to equipment purchases , only authorized exchange sources were used to procure items needed to be competitive. The Plaintiff by his own intuition / merit introduced 24 Hour Credit Card Gas Dispensers to the Military in Alaska. Sales the first year the sales volume went up 1.3 million gallons. Again the Plaintiff's Personnel records reflect that management didn't share the same good vision the Plaintiff had about equipment. These two issues became red flags and the Plaintiff's legacy . As management rotated and changed things got worse . Eventually the Plaintiff was cohered into taking a bogus retirement plan. Exhibit 3 contains a Sales graph to performance comparison of the Plaintiff .

## Arguments

The Defendant had several opportunities to resolve the Plaintiff's complaint. The Army and Air Force Exchange Service has displayed a serious lack of understanding, compassion and plain core values which are supposed to be the benchmark of the organization. The Plaintiff was always forthright and honest with his presentation of facts and requests. The Exchange has done a marvelous job with the falsification of documents and tainting the Plaintiff's character.

The Army and Air Force Exchange Service failed to exercise their administrative responsibilities and provide assistance to the Plaintiff on discrepancies brought to their attention about his retirement. On one hand the Exchange argues that the Plaintiff failed to exhaust his administrative obligations which he did not. On the other hand the Defendant ignored the problem until it became a lawsuit and now by their own negligence claim a statue of limitations. The facts show the retirement was unlawful and the lawsuit was filed within two years of the last correspondence with the Defendant on the matter which was June 11, 2003. The lawsuit was filed in court on April 12, 2005 with in the two years required by the Federal and States statutes' of limitations. The statement and assertions found in the Defendants conclusion to there motion are incorrect.

A RIF ( reduction in force ) is a reduction in the number of employees authorized at a particular AAFES element. A RIF element is an Exchange, a Distribution Center a Region etc., and all facilities of that element with in a 30 mile radius. The Defendant first claimed on the Plaintiff's advanced Notice Letter that a RIF roster was accomplished as means to justify his termination of employment. Without a RIF roster the Plaintiff was unlawfully terminated and the only remedy is reinstatement. The Plaintiff was a Retail Manager in the Northern Alaska Exchange Element.

## Conclusion

The Army and Air Force Exchange Service has failed to render the required service to a retired employee seeking assistance. Unlawfully the Plaintiff was denied due process in his retirement activities and was prevented from attaining a prompt fair solution. The Plaintiff was unable and could not use the EEO channels to complain because of the untimeliness caused by the Defendant's unlawful administration of the Plaintiff's retirement. The retirement was administered May of 2001. The error in retirement pay was note by the Plaintiff's tax accountant in April 2002. The Plaintiff tried continuously since March 2002 to obtain administrative remedy up until the point a lawsuit became the last and only coarse of action.

The Plaintiff Motions that the Defendants Motion to Dismiss, or in Alternative, for Summary Judgement be denied.

*Richard F. Reznak*

Richard F. Reznak
Plaintiff, Pro-Se

### Reduction-In-Force (RIF)

3-78. A RIF is a **reduction in the number of employees** authorized for a particular AAFES element. A RIF element is an exchange, a distribution center, a region, etc., and all facilities of that element within a 30-mile radius. There are different RIF procedures for HPP/PFP, management and EMP employees. All three procedures are described here.

3-79. When it appears necessary to transfer, downgrade/reduce the level-tier/demote or separate employees based on a RIF, the following applies:

a. Such actions involving regular full-time employees will be avoided or held to the minimum, and only taken when no other actions will accomplish the needed results.

b. Local employment offices, appropriate firms, Federal, state and local government agencies will be asked to help separated employees find jobs.

c. RIF action will not be used where other personnel actions are more appropriate (e.g., separation for cause, unsatisfactory performance, declination of transfer).

d. If consistent with mission requirements, the necessary reduction should be achieved by not hiring new employees; curtailing conversions of temporary employees to regular employment status; separating employees during their probationary period; separating employees who submit requests for retirement upon a curtailment announcement by the Commander, AAFES; reducing the hours of intermittent employees, etc.

e. Any mobile employee who refuses a transfer in connection with a RIF will be separated and will forfeit "move to selected residence" entitlement.

3-80. No RIF action will be taken until:

a. A formal determination has been made the work force must be reduced due to reorganization (which includes changes in positions resulting in upward or downward reallocation); excessive personnel costs; phase down, consolidation; transfer of function; the need to reemploy a person exercising veteran reemployment rights; and return of an employee from LWOP who has lost return rights to his/her former job.

b. The affected positions have been identified by job title.

3-81. **Before you do anything:**

a. **Always** advise the union before implementing a RIF affecting bargaining unit employees if there is a union.

b. Some bargaining agreements have RIF procedures that are different from those described here. In cases where the procedures conflict, **always** use those in the bargaining agreement.

c. Freeze hiring whenever a RIF is imminent.

d. Only include on the RIF roster those employees assigned to the same RIF element within a 30-mile radius of the place where the affected jobs are.

e. A RIF element is an exchange, a distribution center, a CONUS region, overseas region, or HQ AAFES.

### NOTES:

1. Before advising the union, coordinate with AAFES-HR-L/L via electronic mail.

2. Coordinate all RIF plans with your region, if required.

3. Coordinate all management RIF plans with AAFES-HR-C.

3-82. **RIF Procedures for HPP/PFP level 1 and 2 employees:**

a. Prepare a list of all vacant HPP and PFP level 1 and 2 positions and all probationary HPP and PFP level 1 and 2 employees in the RIF element.

b. Prepare a RIF Ranking Form, AAFES Form 1200-096, for all employees assigned at the same grade or lower in the job title(s), defined by the first four digits of the job code, affected within the RIF element. Prepare separate ranking forms for RFT, RPT and INT employees.

c. **Performance.** Figure the performance score (30 points maximum) as follows:

EXHIBIT 1

 (1) If there are at least 3 performance evaluations, average the scores of the last 3.

 (2) If there are only 2 performance evaluations, average the scores of the 2.

 (3) If only 1 performance evaluation, use the score from that PER.

 (4) If there is no performance evaluation, prepare one and use that score.

**NOTE: *Where both HPP and PFP performance evaluations are involved, they must be converted to match.***

 d. **Potential.** To figure the potential score (6 points maximum):

 (1) Give 2 points for each AAFES PDP/EDP/MDP/course completed satisfactorily.

 (2) Give 2 points for each course approved under the AAFES tuition assistance program and completed satisfactorily.

 e. **Length of Service.** To figure the length of DoD NAFI service:

 (1) Give 1 point for each full year of DoD NAFI service.

 (2) For fractional parts of a year, give ½ point for periods of DoD NAFI service of less than six months and give 1 point for periods of six months or more.

 f. Prepare separate RIF retention registers for RFT, RPT and INT employees, listing the names in descending order by grade/level-tier, and within each grade/level-tier in descending order by retention score.

 g. Start at the top of each retention register, beginning with RFT, then RPT, then INT, and consider employees for jobs for which they qualify using one of the following actions *in the order listed:*

 (1) Continue in the same position.

 (2) Lateral local transfer to a vacant RFT position.

 (3) Lateral local transfer to a position held by a RFT probationary employee.

 (4) Downgrade/reduction in level/tier local transfer to a vacant RFT position.

 (5) Downgrade/reduction in level/tier local transfer to a position held by a RFT probationary employee.

 (6) Lateral local transfer to a vacant RPT position.

 (7) Downgrade/reduction in level/tier local transfer to a vacant RPT position.

 (8) Downgrade/reduction in level/tier local transfer to a position held by a RPT probationary employee.

 (9) Lateral local transfer to a vacant intermittent position.

 (10) Downgrade/reduction in level/tier local transfer to a vacant intermittent position.

 (11) Separation.

 h. Send/FAX a completed copy of the RIF rosters to the region, if required, showing:

 (1) The proposed action written by each employee's name listed on the roster.

 (2) A listing of vacant positions, by job title, grade/level-tier and category, including probationary employees.

 (3) A narrative summarizing the reason(s) for the RIF action.

 (4) The anticipated staffing/dollar benefits to be gained by the RIF.

 (5) Any negative impact anticipated when the RIF is implemented.

 i. When concurrence is received from the region, send the completed RIF retention register to the PMO for review and approval.

 j. Actions will be adjusted, as appropriate, if employees resign or decline acceptance of RIF actions.

3-83. **RIF Procedures for Management Employees:**

 a. Prepare a list of all vacant management positions and all probationary management employees in the RIF element.

 b. Prepare a RIF ranking for all management employees assigned at the same band (level) or lower in the job title(s), defined by the first four digits of the job code, affected within

the RIF element. Fill out a separate RIF ranking for EMP and non-EMP employees.

c. **Performance.** Figure the performance score (30 points maximum), using the *Overall Evaluation* or the *Performance* block on the PER to get the performance score. Assign these values:

| Performance Rating from AAFES Form 1300-003, PER | Performance Rating from AAFES Form 1300-008, PIE | Value |
|---|---|---|
| Superior | 49-64 | 30 points |
| Outstanding | 39-48 | 20 points |
| Satisfactory | 32-38 | 10 points |
| Marginal | - | 5 points |
| Unsatisfactory | 0-31 | 0 points |

d. **Compute the average performance score as follows:**

(1) If there are at least 3 management performance evaluations, average the scores from the last 3.

(2) If there are only 2 management performance evaluations, average the 2 scores.

(3) If only one management performance evaluation exists, use the score from that PER.

(4) If no management performance evaluation exists, prepare one and use that score.

Multiply the average performance score by **three**.

e. **Potential.** Figure the potential score (70 points maximum) using these factors:

(1) **Promotability**: 20 points if recommended for promotion ahead of others on most recent performance evaluation; 10 points if recommended for promotion along with others on the most recent performance evaluation; 0 points if not recommended for promotion on the most recent performance evaluation.

(2) **Mobility**: 20 points if mobile (employee must have an affirmative mobility statement on file as of the date the RIF is declared, and employees who have changed from non-mobile to mobile must have made a non-local transfer under their current mobility obligation); 0 points if non-mobile.

(3) **Education**: 15 points for a high school diploma (or GED equivalent); 1/10th of one point for each credit hour completed under a semester or trimester system; 1/15th of a point for each credit hour completed under a quarter system (maximum 30 points).

f. **Length of Service.** Figure the length of DoD NAFI service by dividing the total completed months of DoD NAFI service by *six*.

g. Prepare separate RIF rosters for EMP and non-EMP employees. List affected employees in descending order by grade, and within each grade in descending order by retention score.

h. **Non-EMP management employees.** Create a RIF plan for non-EMP management employees by starting at the top of the retention register and considering employees for jobs for which they qualify. **Use one of these actions, in the order listed:**

(1) Continue in same position.

(2) Lateral transfer to a vacant position.

### Redelegation of Human Resources Management Authority

1-81. Any redelegation of human resources management authority will:

    a. Be in writing and addressed by job title.

    b. State whether full or limited authority is redelegated.

    c. Give authority to those serving on behalf of the regular incumbent.

    d. Be limited to no more than one individual for each PMO. (Exceptions may be granted to authorize limited redelegations for remote activities. The SVP/AAFES-HR will approve requests for exceptions or unique situations.)

    e. Be made to a management or key host-country local national.

1-82. All references to PMOs in these pages include their written designees, if any. The tables on the next pages show the approval authority for various personnel actions.

1-83. ~~Personnel actions for management employees who are "stovepiped" to HQ AAFES (assigned to HQ but working in another location) are not specifically reflected in these tables. The C/AAFES-HR-L is the PMO and AAFES-HR-L/H serves as Human Resources Office (HRO) for actions affecting stovepiped people.~~

1-84. Approval authority to appoint retired military can't be redelegated.

1-85. ~~Appointments of individuals with special qualifications to Performance Based Pay (PBP) and Pay for Performance (PFP) positions at a rate of pay above the minimum of the band/level and to HPP positions at a step higher than step 1 may be authorized by the appointment approval authority.~~

1-86. When using the delegation of authority tables on these pages at pay-for-performance locations, refer to the chart under "Job Changes" in Chapter 15 of this EOP.

## TABLE 1

### APPOINTMENT, REINSTATEMENT, REHIRE

| For appointment to any: | Approval authority is: | Documents are prepared by: |
|---|---|---|
| HPP or NF-2 and below position | PMO | HRO |
| Band ~~3(1) or NF-3/2~~ 3A or 3B position under a region or AAFES-LG* | SVP/USR, SVP/VP OR, SVP/AAFES-LG | HRO |
| Band 3 ~~or NF-3~~ position under HQ AAFES/* | PMO (~~C~~VP/AAFES-HR-~~L~~S) | HRO (AAFES-HR-~~L~~S/H) |
| Band ~~3(2) or NF-3/1~~ 3C, 3D or 3E position under a region or AAFES-LG; Band 4 and above; ~~NF-4;~~ or College/Management Trainee position | ~~C~~VP/AAFES-HR-C | AAFES-HR-C |

*Excluding College and Management Trainee positions.

C-3 (Dec 03)

## TABLE 2

## APPOINTMENT OF RETIRED MILITARY WITHIN 180 DAYS OF RETIREMENT

| If the retiree was: | And is appointed to any: | The approval authority is: |
|---|---|---|
| Enlisted or an officer | HPP or NF-2 and below position | PMO |
| | Band 3(1) or NF-3/2 3A or 3B position under a region or AAFES-LG* | SVP/USR, SVP/VP OR, SVP/AAFES-LG |
| | Band 3 or NF-3 position under HQ AAFES/AOC* | PMO |
| | Band 3(2) or NF-3/1 3C, 3D, or 3E position under a region or AAFES LG; or any Band 4, NF-4, or College/Management Trainee position | CVP/AAFES-HR-C |
| | Band 5 and above position | CDR/AAFES |
| Enlisted or an officer last assigned to HQ AAFES | Any position | CDR/AAFES |

*NOTE: Before granting approval to employ a retired military member within 180 days of retirement, see employment criteria under Employing Retirees in Chapter 2.*

*Excluding college and Management Trainee positions.

## TABLE 3

## PROMOTIONS

| For promotion to: | Approval authority is: | Documents are prepared by: |
|---|---|---|
| HPP or NF-2 and below | PMO | HRO |
| Band 3(1) or NF-3/2 3A or 3B under a region or AAFES-LG* | SVP/USR, SVP/VP OR, SVP/AAFES-LG | |
| Band 3 or NF-3 under HQ AAFES/AOC* | PMO | |
| Band 3(2) or NF-3/1 3C, 3D, or 3E under a region or AAFES-LG; Band 4, NF-4, and College/Management Trainee positions | CVP/AAFES-HR-C | AAFES-HR-C |
| Band 5 | CDR/AAFES | AAFES-HR-C |
| Band 6 | AAFES BoD | AAFES-HR-C |

*Excluding College and Management Trainee positions.

EOP 15-10
1-11

C-3 (Dec 03)

# TABLE 4
# TEMPORARY ACTIONS

| If the action concerns: | Approval authority is: | Documents are prepared by: |
|---|---|---|
| Detail to any position | PMO | HRO |
| Temporary promotion to an HPP, NF-level, or management position | | |
| Training assignment for an HPP or NF-2 and below position | | |
| Training assignment for a Band ~~3(1) or NF-3/2~~ 3A or 3B position under a region or AAFES-LG* | SVP/USR, SVP/VP, SVP/AAFES-LG | |
| Training assignment for a Band 3 ~~or NF-3~~ position under HQ AAFES/~~AOC~~* | PMO | |
| Training assignment for a Band ~~3(2) or NF-3/1~~ 3C, 3D, or 3E position under a region or AAFES-LG, any Band 4 position, and all College/ Management Trainee positions | ~~C~~VP/AAFES-HR-C | AAFES-HR-C |

*Excluding College and Management Trainee positions

*(CHAPTER CONTINUES)*

12-23. When an employee is removed from a temporary promotion in conjunction with a temporary assignment and returned to his/her permanent job, return the employee to his/her former rate of pay, and reapply any pay adjustments and annual performance increases received during the temporary promotion.

**NOTE: Temporary promotions can also be used to accommodate training assignments.**

### Demotion Due to Unsatisfactory Performance

12-24. Employees reassigned to a position in a lower band or from a position in the HDR level to a position in the LDR level of the same band due to unsatisfactory performance will be placed at the minimum rate of the band or level to which reassigned.

### Voluntary Demotion

12-25. An employee who requests a voluntary reassignment from an LDR position in one band to an HDR position in the next lower band or from an HDR position to an LDR position in the same band will be placed in the position with an 8% decrease in pay or at the minimum rate of the position, whichever decrease is less. If an 8% decrease in the employee's rate of pay exceeds the maximum rate of the lower band, place the employee at the maximum rate of the band. This decrease in pay also applies to demotions that occur as the result of a request for compassionate transfer.

12-26. Decreases in pay resulting from voluntary demotions will exceed 8% when the demotion involves placement in a job with a decrease of more than one level of responsibility. For example, an employee who requests a voluntary reassignment from an HDR position in one band to an HDR position in the next lower band, or from an LDR position in one band to an LDR position in the next lower band, will be placed in the position with a 16% decrease in pay or at the minimum rate of the band/level, whichever decrease is less. A voluntary demotion from an LDR position in one band to an HDR position two bands lower (e.g., Band 5(1) to Band 3(2)) would result in a 24% decrease in pay or to the minimum rate of the band/level, whichever decrease is less.

### Involuntary Demotion

12-27. When an employee is involuntarily reassigned to a position in a lower band due to RIF, reallocation or reclassification, the employee will be placed in the position at his/her current rate of pay. If the maximum rate of pay for the band is less than the employee's rate of pay and the employee meets the criteria for pay retention, he/she will be placed on pay retention in accordance with the policies and procedures for pay retention. If the employee is not eligible for pay retention, he/she will be placed at the maximum rate of pay for the band. These involuntary demotions from one band to a lower band require advance and final notices and the employee may appeal the final decision under the provisions of Chapter 6 of this EOP, or through the negotiated grievance procedure, as appropriate.

12-28. If within one year of the effective date of the demotion the employee is returned to the band from which demoted, it is not a promotion and there will be no change in the employee's base hourly rate.

12-29. If the employee is returned to the band from which demoted after one year, the action will be treated as a promotion.

### Reinstatement

12-30. When a former PBP employee is reinstated, place the employee at an appropriate rate of pay, with consideration given to the employee's former band and rate of pay.

### PBP Position Classification

12-31. PBP positions are classified according to criteria outlined in the DoD NAF Payband System in DoD 1401.1-M, Personnel Policy Manual for Nonappropriated Fund Instrumentalities. AAFES-HR-L is responsible for maintaining classification standards and job descriptions in support of Performance-Based Pay.

March 11, 1999

101 12th Avenue
Fairbanks, AK 99701

Attn:        Ted Stevens
             Alaska State Senator

Subject:     Grievance, Formal


Re:          Judith A. Riley

Dear Mr. Stevens:

In accordance with EOP 15-21 Chapter 1, paragraph 1-19, I am formally grieving actions and decisions that are adversely affecting my career. I have made several efforts to resolve my complaint at the lowest level. I have contacted Mrs. Amy Birmingham, the Area Manager and Mrs. Lois Esposito, the Area Personnel Manager. I feel my attempts to grieve my concerns have not adequately been evaluated or considered. I now feel threatened by reprisal and actions that have recently occurred.

The Eielson Service Station was annexed to the Fort Wainwright Service Station in the summer of 1994. The dates can be verified. The official grading criteria for an Annexed Service Station at that time called for a UA 7. Under current criteria, the position calls for a PB 3/2. I have been doing the job for over four years.

I was recently converted from a Grade 5 Foreman to a Shift Manager PB 3/1. The conversion did not comply with AAFES grading criteria. At the same time, two Grade 4 Foremen were promoted to PB 3/1. These Foremen were subordinate to me, both of whom I hired and trained. My previous title of Grade 5 Foreman was a Nonstandard position created by the previous Area Manager. I applied for this position when it was posted, along with the other Foremen, and was selected. The position gave me a salary increase and supervisory authority over other Foremen and station mechanics. Since the recent conversions and after voicing my concerns, I have been advised by our Area Personnel Manager that I no longer can write PER's for the PB 3/1 Shift Managers who used to work directly for me and still rely on my guidance and supervision. To further complicate matters, I was informed by the Exchange Area Manager that I can no longer approve PER evaluations written by other Shift Managers on lower ranking associates. These people also rely on my experience, guidance and supervision. I challenge this business decision because it is not in the best interest of AAFES, confuses assigned employees, defies common sense and personally is an abomination of any authority vested in me during my twenty years of loyal, dedicated service to AAFES. I want to see regulations that govern this kind of management conduct. I contend that regardless of my PB grade, I have earned my seniority over other assigned Shift Managers and should continue to write and concur on PER evaluations. I have often wondered if the fact that I am female has any bearing on my promotability.

I would like the above investigated and an explanation provided as to why I was not promoted at an earlier date. I deserve back pay and related benefits since 1994. This injustice has been allowed to flourish too long as a result of the Western Region Policy to cut expenses and stiff arm employees who object. I addressed my questions on grading criteria directly to Mrs. Lois Esposito to the point I was told "not to bother her". I understand she was advised by Headquarters in Dallas that based on my situation in an Annexed facility, 26 miles away from the parent facility, the position warranted is PB 3/2. Mrs. Esposito's choice to stall this situation has caused a great deal of undue stress and mental anxiety for my other employees as well as myself.

EXHIBIT 2

I have informed my immediate Supervisor, Mr. Richard Reznak, of my intentions to file this grievance. He has, to the best of his ability, tried to negotiate these issues with both the previous and current Area Managers. His efforts have resulted in criticism and reprisal. He has suffered attacks on his character and ability to do his job professionally. I have no plans to wait in line until this happens to me. I am taking the matter seriously and will involve my Congressman and other pertinent State officials. It seems highly unfair that other operations within CONUS operate on AAFES policy and standards that differ from those practiced in Alaska.

Please contact me at (907) 377-2002 if you have any questions.

Respectfully,


Judith A. Riley
Eielson Service Station
Eielson A.F.B., AK  99702


**DEPARTMENTS OF THE ARMY & AIR FORCE**
Headquarters Army & Air Force Exchange Service
Dallas, Texas 75266-0202



MAY 04 1999

Honorable Ted Stevens
United States Senator
Box 4, 101 12th Avenue
Fairbanks, Alaska 99701

Dear Senator Stevens:

Thank you for your March 24, 1999 inquiry on behalf of Ms. Judith A. Riley, an associate of the Army and Air Force Exchange Service (AAFES) at the Eielson AFB Exchange Service Station in Alaska.

On March 11, 1999, Ms. Riley filed a formal grievance with the Alaska Consolidated Exchange Area Manager. In her letter, Ms. Riley cited various actions and decisions that she feels have adversely affected her career, most recently, her being converted from the senior hourly paid employee at the Eielson Service Station to a position equal to persons she previously supervised. In a letter dated March 22, 1999, the Area Manager denied the grievance based on the fact that it was not filed in accordance with the proper grievance procedures nor was it filed in a timely manner. The letter likewise advised Ms. Riley that she could appeal the decision to deny the grievance through the appropriate AAFES appeal procedure, within 15 calendar days of receipt of the letter. As of this writing, no appeal has been received from Ms. Riley.

We have reviewed the various issues presented in Ms. Riley's letter and find that her conversion to Shift Manager, PB 3(1), in November 1998 was improper, that she should have been promoted to Annex Manager, PB 3(2). We have taken action to correct this matter, promoting Ms. Riley to Annex Manager, PB 3(2), retroactive to November 28, 1998.

If Ms. Riley feels that she has been discriminated against because of her race, color, religion, sex, age, national origin, or physical or mental disability, she must bring the matter to the attention of an EEO counselor within 45 calendar days of the matter. The names, work locations, telephone numbers, and photographs of EEO counselors in her area are posted on associate bulletin boards. She may also contact Ms. Lois Esposito, the Human Resources Manager of the Alaska Consolidated Exchange, and a counselor will be made available to her. Ms. Esposito can be reached at telephone number (907) 753-0238.

Thank you for your interest in the Army and Air Force Exchange Service.

Sincerely and respectfully,

BARRY D. BATES
Major General, USA
Commander

TED STEVENS, ALASKA, CHAIRMAN

THAD COCHRAN, MISSISSIPPI
ARLEN SPECTER, PENNSYLVANIA
PETE V. DOMENICI, NEW MEXICO
CHRISTOPHER S. BOND, MISSOURI
SLADE GORTON, WASHINGTON
MITCH McCONNELL, KENTUCKY
CONRAD BURNS, MONTANA
RICHARD C. SHELBY, ALABAMA
JUDD GREGG, NEW HAMPSHIRE
ROBERT F. BENNETT, UTAH
BEN NIGHTHORSE CAMPBELL, COLORADO
LARRY CRAIG, IDAHO
LAUCH FAIRCLOTH, NORTH CAROLINA
KAY BAILEY HUTCHISON, TEXAS

ROBERT C. BYRD, WEST VIRGINIA
DANIEL K. INOUYE, HAWAII
ERNEST F. HOLLINGS, SOUTH CAROLINA
PATRICK J. LEAHY, VERMONT
DALE BUMPERS, ARKANSAS
FRANK R. LAUTENBERG, NEW JERSEY
TOM HARKIN, IOWA
BARBARA A. MIKULSKI, MARYLAND
HARRY REID, NEVADA
HERB KOHL, WISCONSIN
PATTY MURRAY, WASHINGTON
BYRON DORGAN, NORTH DAKOTA
BARBARA BOXER, CALIFORNIA

STEVEN J. CORTESE, STAFF DIRECTOR
JAMES H. ENGLISH, MINORITY STAFF DIRECTOR

**United States Senate**

COMMITTEE ON APPROPRIATIONS
WASHINGTON, DC 20510-6025

May 10, 1999

Ms. Judith A. Riley
Eielson Service Station
Eielson AFB, Alaska 99702

Dear Judith:

I have received the enclosed response from Army Air Force Exchange Service, to my inquiry on your behalf. I am pleased to have been of assistance to you in this matter.

With best wishes,

Cordially,

TED STEVENS

Enclosure

AK Consolidated Exchange
PO Box 900
Elmendorf AFB, AK  99506

AM                                                            15 July 1996

SUBJECT:  PER Rebuttal


Rick Reznak
Combined Automotive Mgr
Wainwright/Eielson SS


1.  As prescribed by EOP 15-10, a response is provided concerning your annual PER rebuttal.

   a.  Your rater expressed the following, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  It is quite apparent that you often took a bold and active position on most issues discussed throughout the rating period.  This is clearly elements of aggressive behavior.  As a UA manager with 20 years of AAFES experience, it is felt that you lack expertise in the field of supporting and respecting Western Region management.  Often, your so-called constructive argument infringes on aggression.  Since I have witnessed and experienced your actions on several occasions,  I can fully support Mr. Smith's descriptive expression, his statement is totally accurate.

   b.  As indicated in previous conversations, the number one AAFES priority during the past 10 months has been devoted toward increasing sales, profitability, and reducing expenses which are applicable to all of AAFES operations within Alaska. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  It is quite apparent that you have difficulties in accepting and understanding Western Region operational goals.

   c.  Your current retail position (UA-11) is based on a standard AAFES volume allocation system.  The distance between service stations, hours of operation and other factors have generated certain credit points, which were utilized on establishing your current grade.  Based on the FY 96 volume allocation review, your position is still classified as a UA-11.

   d.  According to current AAFES procedures, you need to be under the rater's review for only a period of 90 days, this requirement has properly been accomplished.

AAFE0000000314

2. During this rating period, your operations have experienced operational deficiencies, i.e. staying in stock on basic merchandise, not performing good housekeeping standards and maintaining a consistent level of ordering disciplines all which are essential in a retail operation. Command and customer relations are considered to be good.

3. Statistically, your operation is considered to be excellent while other areas drop below this rating. In view of your total performance which is based on all segments of your operations, I find Mr. Smith's rating of "Outstanding" to be a true and accurate assessment of your total performance. Your FY 96 annual PER will remain as "outstanding."

WM RAHER
Area Manager

AAFE0000000315



Sales to Evaluation Comparison 1995 - 2000

EXHIBIT 3

